## No. 11,953.

### SUCCESSION OF JACOB VON HOVEN.

Sales made in succession proceedings by orders of court are judicial sales; adjudicatees at such sales can not be made to occupy the position of parties purchasing through conventional sales.

Mere concurrence of opinion among heirs as to some of the details to be followed in the making of judicial sales has not the far-reaching consequence of altering the legal character of the proceedings. Sales made in the course of proceedings for a partition do not constitute the partition. They are incidents of the partition, means leading to the ultimate judicial adjustment of rights.

Under Sec. 18, Act No. 40 of 1877, there is but one single "*first insertion*" in a judicial advertisement, all others following the "*first*" are "*subsequent insertions.*" The doctrine of "*alternate first insertions,*" by making the advertisement non-consecutive, and charging each first insertion of a renewed advertisement as an "*alternate first insertion*" is not sustained by law.

The fees of an auctioneer are regulated by R. S., Sec. 160. When property is sold by order of court to effect a partition the fee of one per cent. on all sums under twenty-five hundred dollars, and one-half of one per cent. on all sums over that amount.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*Benjamin Rice Forman* for Executrix and Succession, Appellee.

*Chas. F. Claiborne* for Wm. A. Kernaghan, Opponent, Appellant.

Argued and submitted March 9, 1896.
Opinion handed down March 23, 1896.

Appeal by William A. Kernaghan, auctioneer, from a judgment of the District Court, dismissing an opposition filed by him to the account of Mrs. Annie M. Von Hoven, as executrix of the succession of Jacob Von Hoven.

### STATEMENT OF FACTS.

Von Hoven died leaving two daughters of his first marriage and a widow. He left a will, by which he bequeathed to the latter certain real estate and personal property, and appointed her executrix of his estate, without bond, but without seizin. She accepted the executorship and qualified. In 1893 the executrix, joined by one of

the heirs, presented a petition, to which they annexed a detailed statement of the estimated debts of the estate, and alleged that the outstanding accounts and movables would not realize enough to pay the same; that it was necessary to sell the property to pay the debts, because the movables and money left were given as a particular legacy to the widow; that certain real estate was acquired during the community; that one-half thereof belonged to the widow, the other half to the heirs of Von Hoven; that the petitioners were unwilling to hold the property in indivision with the other heir. In view of the premises, they prayed that that heir be cited; that enough of the property described be ordered to be sold to pay debts, and that a decree be made for a partition of all the property of the succession not sold to pay debts, and not including the legacy to the widow.

The heir cited answered, raising a number of issues and contesting the correctness of the statement of debts filed, but expressing her willingness to have a partition and division of the property and admitting that it could not be divided in kind. She herself prayed that there be judgment decreeing a final partition of the estate by licitation.

The District Court rendered a judgment ordering " that a partition be granted, and to that end all the real property described in the inventory be sold at public auction with the exception of that which has been bequeathed to the widow, said sale to be made by W. A. Kernaghan, auctioneer, who shall sign an act of sale upon the terms of one-third or more cash, at purchaser's option, and the remainder on credit at one and two years, with 8 per cent. interest and the usual security clauses; that the funds arising from said sale be deposited in the judicial depository, and the executrix do immediately thereafter file her account; that the issues not herein disposed of, raised by plaintiff and defendant, be postponed and reserved to be tried and decided by way of opposition to the said account."

On the 28th day of May, 1894, the attorney of the executrix, and one of the heirs, Mrs. Englebrecht, and the attorney of the second heir, Mrs. Muller, agreed " that the property of this succession should not be advertised in French, as required by law for judicial advertisements, but shall be advertised in lieu thereof in the *Picayune* and *Times-Democrat* during the period required by law; also,

that this waiver of the French advertisement shall not in any way be held as abandoning the present judicial sale; also, that the advertisements should be changed at the proper time so as to describe the lots after the plans are made thereof, or in any way that the auctioneer thinks best to the interests of all parties; also, that the auctioneer is to spend one hundred and fifty dollars in judicial advertisements in other cities of the property in question."

On the 31st of the same month counsel of Mrs. Miller, suggesting to the court that the judgment of the Supreme Court had been rendered affirming the judgment of the District Court and that the auctioneer declined to carry out said decree and advertise the sale of the property, obtained from the court an order that the auctioneer be ruled to show cause why he should not advertise and sell the property under the judgment aforesaid, or on failure so to do, why the sheriff should not be ordered to make said sale instead. The trial of the rule resulted in an order of court ordering the auctioneer within five days of the date thereof to sell the real property of the succession, and on failure so to do that the civil sheriff be ordered to make said sale in his stead. The auctioneer obeyed the order given, advertised the property for sale and finally sold it at public auction, the total amount of sale being thirty-three thousand six hundred and forty dollars.

The executrix filed an account and tableau of distribution on which she placed as the amount due to W. A. Kernaghan, the auctioneer who made the sales of the property, the sum of four hundred and fifty dollars and seventy-nine cents, of which she declared two hundred and thirty dollars had been paid.

The auctioneer opposed the account, claiming one thousand three hundred and sixty-seven dollars and fifty-seven cents as being due to him, with legal interest from July 18 (the date of the sales) until paid.

The District Court dismissed the opposition and opponent appealed.

The opinion of the court was delivered by

NICHOLLS, C. J. Opponent's contention that the sales made by him were not judicial sales is not tenable. The property was advertised to be sold and was sold under an order of court "in the matter of the succession of Jacob Von Hoven." Bids were offered

and accepted and adjudications made on the faith of such being the character of the sales. Ajudicatees at those sales would be entitled to the full protection of the consequences flowing from them as being judicial sales and could not be made to occupy the position of parties purchasing through conventional sales, a position entirely different from that resulting from judicial sales.

It is claimed that the sales were not "succession," but "partition" sales, and that as partition sales they were "voluntary" or "agreed sales" between the parties in interest.

Article 1294 of the Civil Code defines a voluntary partition. as "one made among all the co-heirs present and of age, and by their mutual consent." The parties interested in this succession were of age and present, but it is a mistake to suppose they were agreed among each other "as to their respective rights." Issues of most serious character were raised betweenthem and submitted for adjudication to the District Court. It is true that all parties recognized the necessity of a partition, and that that partition was to be effected by litigation; also that there was no difference of opinion as to the terms of sales, but the sales made in the course of the proceedings did not constitute the partition; they were incidents of the partition, means leading to the ultimate end, the judicial adjustment of rights. It is an error to suppose that a mere concurrence of opinion among heirs as to some of the details to be followed in the making of the sales has the far-reaching consequence of altering the legal character of the proceedings. The succession of Von Hoven is still under administration; the very proceeding is evidence of that fact, for this case comes to us on appeal from an opposition filed by appellant to the account of the executrix. In the opinion heretofore rendered by us all issues between the parties were ordered to be referred for adjustment to the final account to be filed by the executrix.

The sales made in this case were for the double purpose of paying the debts and determining the rights of the widow and heirs. The mere form in which these matters have been presented works no change in the fact that they are forced legal proceedings. But the "agreement" among the heirs and the widow in this case on which opponents relies brought no change in the manner of proceeding from that required by the judgment of the court. The parties agreed that the French advertisement should be omitted, but

this agreement was not carried out, for upon the refusal of the auctioneer to advertise he was ruled into court to show why he should not be made to do so, and he was ordered to proceed under the judgment, and that order he obeyed by making publication both in French and English. There was, therefore, no departure from legal requirements upon which any one could base a legal objection to the sale. The agreement referred to authorized " the auctioneer to change the advertisements at the proper time, so as to describe the lots after the plans are made thereof, or in any way that the auctioneer thinks best to the interest of all parties," but in no respect was this authorization made use of to change the situation from what it should have been had it not been written. The action of the auctioneer in describing the lots as he did and making the sales thereof as he did was not a deviation from the orders of the court. The judgment did not direct the auctioneer to sell the properties in block, and had he acted in the exercise of his own judgment as to what was best to be done in the premises independently of any " agreement " or authorization to him to do so, his course would have been sustained had he carried it to execution without opposition or objection from the parties concerned. We are not called on here to discuss what the legal effect would have been by way of resistance or avoidance had the auctioneer, by reason of a consent between heirs to waive a formality made necessary by the law to be followed, omitted this formality nor who could have taken advantage of it. Were such objection taken it would be made to rest precisely upon the ground that the sales ordered to be made were " judicial sales " and could legally be made as nothing else. Opponent can raise no issue as to the character of the sales; he had no interest in the property before the same and has had none since. In Haché vs. Ayraud, 14 An. 174, this court held that a sale to effect a partition under a decree of the court must be made to the highest bidder at public auction and that it was a judicial sale. The defendants in that case admitted the propriety of a partition by licitation. In the Succession of Macarty, reported in the 32 An. page 7, the auctioneer who made the sales in that proceeding presented to this court propositions very similar to those pressed on us here, but these views were not sustained by the Supreme Court. The court in that case was called to pass upon the question of the commissions to which an auctioneer was entitled. The suit was a partition suit in which one of the heirs was a minor.

The District Court allowed the auctioneer two and a half per cent. commissions on the shares of the majors, but reduced it on the minor's share.

An examination of the transcript in that case shows that eighteen different pieces of real estate were sold by the auctioneer. Testimony was adduced to show that "two and a half per cent. was the usual and reasonable charge made by auctioneers in the parish of Orleans on the amount of sales of real estate, including partition sales." The court quoting Sec. 160 of the Revised Statutes said its provisions were plain; that the property sold was alleged to be and was sold by the auctioneer as succession property, and moreover he himself acknowledged that it partly belonged to a minor; that for these reasons he could legally charge on the entire amount of the sale the lowest of the commissions fixed by law. The sale of the property having amounted to forty thousand dollars, judgment was rendered in favor of the auctioneer for two hundred and twelve dollars. The decision in that case controls this in respect to the commissions chargeable. The next question is as to the costs of advertisements. It will be noticed that the claim on this account is presented, not by the proprietors of the newspapers as amounts due to them, but by the auctioneer as being an amount due to him.

It will be further noticed that the executor and heirs acquiesce in advertisements as having been properly inserted in the *Picayune* and the *Times-Democrat*. Had the claims been placed on the account as due to those papers themselves, the fact that they were entitled to some extent to remuneration would be admitted, as the heirs raised no issue as to the propriety and legality of the particular paper in which the insertions were made. Had matters been shaped as we have supposed, under the circumstances stated, the New Orleans *Bee* (the French newspaper) would have been driven to an opposition as having been entirely left out. Upon such an opposition it would have been clearly entitled to be paid some amount. The debatable question would have been the amount to which it was entitled. The law itself requiring a French advertisement, and the auctioneer having been under the order of court (rendered after the agreement between the parties had been made) directed to sell under the judgment, it was his duty to have conformed to the law. The newspaper having rendered legal services could not have been cut off from legal remuneration through an at-

40

tempted substitution of a newspaper in its stead as the medium of advertisement. As matters stand actually, though the names of the *Picayune*, the *Times-Democrat* and the New Orleans *Bee* figure in the discussion, the matter really in dispute is one as to amounts to be paid rather than the person to whom they are to be paid. The papers themselves have, we presume, been settled with and matters are now confined to the executors, the heirs and the auctioneer. As between those parties we are of the opinion that the auctioneer was authorized only to advertise in two papers. The agreement in question, on its face, limited the number of papers to two. The selection of the *Times-Democrat* and the *Picayune* as those in which advertisements were to be placed was based directly upon a contemplated exclusion of the New Orleans *Bee*, and when it became necessary for the auctioneer to abandon the agreement and fall back on the provisions of the law itself the agreement ceased to have any effect on that point. It could be relied on only according to its terms and by its terms only two papers were to be advertised in. The next question is as to the number of insertions which the auctioneer was authorized to charge for. The succession of Von Hoven is a wealthy one and it is perfectly obvious that the contention between the parties is one in which really only the executor, the heirs and the auctioneer are concerned. We have said that the auctioneer could not have been justified while acting under orders of a court (by reason of any private instructions to him by the heirs or executor or both) to deviate from the requirements of the law, but it is perfectly consistent with this to say that those parties could, in matters wherein none other than themselves would be concerned, authorize an auctioneer to do something more than was required of him by law, and make themselves personally responsible to him to the extent that they would become so by reason of their instructions. We think the agreement between the heirs and executor, communicated to the auctioneer, justified him as between themselves to insert advertisements a greater number of times than was called for by law, though nothing therein justified him in altering rates. The heirs and executor authorized the auctioneer to change the advertisements in any way he thought best to the interest of all parties. He thought it to their interest to publish the proposed sales more frequently than was required by law. They were present, presumably saw the advertisements, made no opposition thereto, and raised objections

·only after they had derived all the benefit of the same.   We think
·objections on that score come with bad grace.   If the situa-
tion of the succession were otherwise than it is, the auctioneer, of
·course, would have to rely exclusively upon the parties outside of
the succession funds.   We think the rates charged for the adver-
tisements entirely unwarranted.   The law is perfectly plain on that
subject.*   The charge for judicial advertisements is seventy cents a
:square for the first insertion and twenty-five cents for each subse-
quent insertion, whether made consecutively or not.   There is but a
single first insertion in a judicial advertisement; all others, following
the first are "subsequent insertions."   The doctrine of "alternate
first insertions," reached by making the advertisements non-con-
,secutive and charging each first insertion of a renewal advertise-
.ment as an "alternate first insertion," may be satisfactory to the
newspapers, but not to litigants, and is sustained by no law.

We are of the opinion that the auctioneer is entitled to one per
·cent.† commission on twenty-five hundred dollars, and one-half per
cent. on the amount of the sales above that sum.   By this rule he is

---

*The 18th section of Act No. 49 of 1877 declares that the "costs of such adver-
·tisements shall not exceed in the parish of Orleans the rate of seventy cents per
square or fraction thereof for the first insertion and twenty-five cents for each
subsequent insertion; * * * one square to consist of the space of one hundred
words solid matter.  If such newspaper refuses to publish at the rate herein spec-
ified, the advertisements shall be published in the manner above provided for in
·cases where there are no newspapers."
    Art 1117 of the Civil Code (in force at the time of the passage of the act just
,quoted from) is as follows:
    "When the advertisements shall be published in the newspapers they shall be
·inserted three different days before the expiration of the term fixed by law, if the
.term be of ten days, unless it be in the places where the newspapers do not appear
·often enough to repeat the advertisement as many times as is required by this
.article, in which case it will suffice if the advertisement be inserted as often as
the gazette appears during that time.
    "For those advertisements for which the term of thirty days is fixed, it suffices
if they are published in the newspapers, as above prescribed, once a week during
that time."
    By Act No. 104 of 1878, relative to judicial advertisements in the parish of Orleans,
it was enacted that "judicial advertisements should be made by publication in a
·daily paper on three different days before the expiration of the term fixed by law
·of the term of ten days, and for those advertisements for which the term of thirty
·days is fixed, it suffices if they are published in a daily paper once a week during
that term, and that all laws and parts of laws conflicting therewith were repealed."
    By Act No. 36 of 1880 judicial advertisements were required in the parish of Or-
leans to be also inserted in the French language in a daily newspaper published
in that language precisely in the same manner, for the same number of times,
and on the same terms as by existing laws were required, or might.thereafter be
required, for the protection of judicial advertisements in the English language.
—Reporter.

    † Section 160 of the Revised Statutes: "No auctioneer shall demand or receive
a higher compensation for his services than a commission of two and a half per
·cent. on the amount of any sale, public or private, made by him; and on sales of
succession property, of property belonging to minors, or in which they may be in-
terested, and on property surrendered by insolvents, made pursuant to an order
·or decree of any court of the State, by the sheriff, or an auctioneer, upon all sums
under twenty-five hundred dollars, one per cent., and all sums over that amount
one-half of one per cent.  In all sales made by the representatives of a succes-
sion, or syndic of an insolvency, they shall charge no commission."—Reporter.

entitled to one hundred and eighty dollarss and seventy cents, instead of one hundred and sixty-eight dollars allowed him by the District Court; that he is entitled for advertisements in one paper for sixteen squares, for the first insertion, eleven dollars; sixteen squares at twenty-five cents for eight insertions, or thirty-two dollars, making a total of forty-three dollars and twenty cents; and for advertisements in a second paper for eighteen squares, for first insertion, twelve dollars and sixty cents, and eighteen squares at twenty-five cents for ten insertions, or forty-five dollars, making a total of fifty-seven dollars and sixty cents.

The account therefore would stand:

| | |
|---|---:|
| Advertisements | $100 80 |
| Commissions | 180 70 |
| Hospital tax | 168 20 |
| Exchange fee | 33 64 |
| Editorial notice | 6 00 |
| Plan | 6 00 |
| Copy of order of court | 75 |
| Total | $496 09 |

instead of four hundred and fifty dollars and nine cents, with legal interest from September 27, 1894, until paid, and costs.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the opponent, William A. Kernaghan, have judgment in his favor on his opposition, ordering that he be placed on the account of the executor as a creditor for the sum of four hundred and ninety-six dollars and nine cents, instead of for the sum of four hundred and fifty dollars and nine cents, with legal interest thereon from September 27, 1894, until paid, and that he recover costs in both courts upon his opposition.